# 96 DTA 49

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE BAYAMON
PANEL I**

GISELLE MARRERO DIAZ
Querellante-Apelada

v.

B.M.J. FOODS H/N/C PONDEROSA STEAK HOUSE
Querellada-Recurrida

Núm. KLCE-95-00930

San Juan, Puerto Rico, a 19 de marzo de 1996

Panel integrado por su presidenta, la Jueza Ramos Buonomo
la Jueza Rodríguez de Oronoz y el Juez Cordero

Ramos Buonomo, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Mediante el presente recurso de *certiorari*, la querellante-peticionaria nos solicita que revoquemos la sentencia sumaria parcial dictada por el foro de instancia, el cual a tenor con una deposición tomada durante los procedimientos de descubrimiento de prueba determinó que el despido de la querellante-peticionaria no obedeció a ninguna de las actividades protegidas por la Ley Núm. 115 de 20 de diciembre de 1991 y desestimó la reclamación de discrimen contenida en la querella presentada.

### I

El 14 de octubre de 1994 la querellante-peticionaria, señora Giselle Marrero Díaz, presentó una querella ante el Tribunal de Primera Instancia en la que alegó que su patrono B.M.J. Foods, P.R., Inc., h/n/c Ponderosa Steak House (en adelante *"el patrono"*) la despidió injustamente, discriminando en su contra por haber ofrecido o intentado ofrecer testimonio ante un foro administrativo en contra de su patrono amparándose en la protección que ofrece la Ley Núm. 115 de 20 de diciembre de 1991, 29 L.P.R.A. sec. 194a y en la alternativa solicitó compensación por el despido injustificado bajo la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185a.

En su contestación a la querella el patrono negó haber despedido a la peticionaria alegando en la afirmativa que ésta renunció voluntariamente. Negó, además, tener conocimiento sobre si la querellante había ofrecido o intentado ofrecer testimonio alguno ante un foro administrativo y que, de haber sido despedida, el despido fue justificado, ya que fue objeto de disciplina progresiva por violaciones a las Normas de Disciplina de la Empresa.

La querellada presentó al tribunal *a quo* una solicitud de sentencia sumaria parcial argumentando que la querellante declaró bajo juramento en la deposición que le tomaron, que su despido no obedeció a ninguna de las actividades protegidas por la Ley Núm. 115, *supra*. La querellada cita parte de la deposición de la cual interpreta que al enterarse que la podían despedir por otra razón, entonces fue que ella comentó que si la despedían iría a querellarse ante el Departamento del Trabajo.

La parte querellante presentó la debida oposición y a su vez presentó una moción solicitando sentencia sumaria a su favor a la cual se opuso la querellada.

El 22 de septiembre de 1996 el tribunal *a quo* emitió la sentencia objeto de este recurso desestimando la causa de acción en cuanto al alegado discrimen bajo la Ley Núm. 115, *supra*, y señalando que quedaba pendiente si la querellante fue despedida injustamente por razón de violar las normas de disciplina de la querellada.

Por otro lado, apenas dieciocho (18) días más tarde, el 10 de octubre de 1996, y porrazón de la solicitud de sentencia sumaria de la querellante, el tribunal *a quo* emitió una Resolución Interlocutoria

determinando que la querellante fue despedida y que el despido fue injustificado, ya que se debió a represalias porque la querellante le dijo a su supervisora que iba a querellarse al Departamento del Trabajo. Lo anterior porrazón del patrono indicarle que se enteró que la querellante trabajaba a tiempo parcial con Bonanza, su competencia, y que por eso la podían despedir.

La querellada presentó el 27 de octubre de 1996 una Moción de Reconsideración de la anterior Resolución Interlocutoria en donde acepta por segunda vez que la querellante fue despedida,█ pero no por represalias, sino porrazón de haber violado la Norma de Disciplina Núm. 42 del patrono █ alegando que lo que resta por determinar es, si a tenor con la Ley Núm. 80, *supra*, la norma es razonable o no.

El 17 de noviembre de 1996 la querellante instó el presente recurso señalando que el Tribunal de Primera Instancia cometió los siguientes errores.

*"A. Erró el Honorable Tribunal de Primera Instancia al desestimar la causa de acción en cuanto al discrimen por la querellante-peticionaria haber ofrecido o intentar ofrecer testimonio ante un foro administrativo.*

*B. Erró el Honorable Tribunal de Primera Instancia al no considerar la solicitud de sentencia por las alegaciones y/o sentencia sumaria radicada por la querellante-peticionaria por entender que carecía de méritos y por resultar académica no obstante haber determinado que el despido fue injustificado, ya que se debió a represalias por la querellante decirle a su supervisora que iba a querellarse al Departamento del Trabajo, luego de que fuera amenazada."*

Ya instado el presente recurso el tribunal *a quo* emitió, el 27 de noviembre de 1996, una Resolución en reconsideración dejando sin efecto la Resolución Interlocutoria dictada el 10 de octubre de 1996 alegadamente porque, a tenor con la Moción de Reconsideración de la querellada, la declaración jurada de la querellante contenía prueba de referencia. Incidió el tribunal al así actuar. █ La presentación de un recurso de *certiorari* ante nos paraliza los procedimientos al nivel del Tribunal de Primera Instancia en cuanto a las cuestiones comprendidas en el recurso. Véase Art. 4.002 de la Ley de la Judicatura de Puerto Rico de 1994.

Examinada la petición de *certiorari*, la moción mostrando causa de la querellada y la réplica a ésta de la querellante, estamos en posición de resolver.

## II

Consideremos ahora los aspectos jurídicos pertinentes al caso ante nos.

La Ley Núm. 115, *supra*, conocida como la Ley de Represalias dispone los siguiente:

*(a) Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o **intente ofrecer, verbalmente o por escrito cualquier testimonio, expresión o información ante un foro legislativo, administrativo** o judicial **en Puerto Rico,** cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.*

*(b) Cualquier persona que alegue una violación a esta ley podrá instar una acción civil en contra del patrono dentro de tres (3) años de la fecha en que ocurrió dicha violación y solicitar se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado. La responsabilidad del patrono con relación a los daños y a los salarios dejados de devengar, será el doble de la cuantía que se determine causó la violación a las disposiciones de esta ley.*

*(c) **El empleado deberá probar la violación mediante evidencia directa o circunstancial.** El empleado podrá además establecer un caso prima facie de violación a la ley probando que participó en una actividad protegida por esta ley y que fue subsiguientemente despedido, amenazado o discriminado en su contra de su empleo. Una vez establecido lo anterior, el patrono deberá alegar y*

*fundamentar una razón legítima y no discriminatoria para el despido. De alegar y fundamentar el patrono dicha razón, el empleado deberá demostrar que la razón alegada por el patrono era un mero pretexto para el despido."* ■ (Enfasis suplido.)

El propósito principal de esta ley es prohibir a los patronos discriminar contra sus empleados o despedirlos por el hecho de que hayan ofrecido o intenten ofrecer verbalmente o por escrito cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico.

Esta protección es independiente de que su declaración esté relacionada o no con el patrono o con el negocio de éste.

El remedio para el empleado víctima de este discrimen incluye daños reales sufridos, angustias mentales, restitución en el empleo, salarios dejados de devengar, beneficios y honorarios de abogado. El patrono en estos casos viene obligado a pagar el doble de los salarios dejados de devengar y de los daños sufridos.

La propia ley dispone las normas evidenciarias que rigen para probar un despido ilegal. Al instar una acción legal contra el patrono, el empleado tiene el peso de la prueba, esto es, debe probar la violación mediante evidencia directa o circunstancial. El empleado puede, además, establecer un caso *prima facie* de violación a la ley probando que participó en una de las actividades protegidas por la ley y que fue subsiguientemente despedido, amenazado o discriminado. En esta segunda circunstancia, una vez el empleado establece las circunstancias anteriores, el peso de la prueba pasa al patrono, quien debe alegar y fundamentar una razón legítima y no discriminatoria para el despido. De alegar y fundamentar el patrono dicha razón, el empleado tiene entonces el deber de demostrar que la razón alegada por el patrono constituyó un mero pretexto para el despido.

Por otro lado, la Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.3 autoriza que se dicte sentencia sumaria inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en Unión a las declaraciones juradas, si las hubiere, demuestran que no hay controversia real sustancial en cuanto a ningún hecho pertinente y que como cuestión de derecho debe dictarse la misma a favor de la parte promovente.

El propósito de la sentencia sumaria es aligerar la tramitación de un caso, permitiendo que se dicte sentencia sin celebrar una vista en los méritos, cuando de documentos no controvertidos surge que no existen controversias genuinas de hechos materiales, sino que lo que resta es aplicar el derecho. *Hurtado Latre v. Osuna y Fresse*, ___ D.P.R. ___ (1996), **95 J.T.S. 98** a las págs. 1061, 1065; *PFZ Properties Inc. v. General Accident Insurance Co.*, ___ D.P.R. ___ (1994), **94 J.T.S. 116,** a las págs. 111, 125; *Caquías Mendoza v. Asoc. Residentes Mansiones de Río Piedras*, ___ D.P.R. ___ (1993), **93 J.T.S. 127,** a las págs. 11068, 11079; *Cuadrado Lugo v. Santiago Rodríguez*, ___ D.P.R. ___ (1990), **90 J.T.S. 59,** a las págs. 7698, 7702.

En el proceso de determinar si la Regla 36.3 es un vehículo apropiado para disponer total o parcialmente de una demanda, el Tribunal Supremo ha expresado que *"[e]l sabio discernimiento es el principio rector para su uso, porque mal utilizado puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido procedimiento de ley. Es por esta razón que el tribunal debe cerciorarse de la total inexistencia de controversias de hechos..,"* Consejo de Titulares del Condominio Parkside v. M.G.I.C. Financial Corp., ___ D.P.R. ___ (1990), **91 J.T.S. 54,** a las págs. 8663, 8668; *González v. Alicea,* ___ D.P.R. ___ (1993), **93 J.T.S. 16,** a las págs. 10377, 10380; *Roig Commercial Bank v. Rosario Cirino,* ___ D.P.R. ___ (1990), **90 J.T.S. 106,** a las págs. 7963, 7965.

Al hacer una relación de los hechos que no están en controversia, la parte que solicita una sentencia sumaria deberá indicar para cada uno de esos hechos, la fuente admisible en evidencia que pruebe los mismos. Así las declaraciones juradas para sostener u oponerse a la moción se basarán en el conocimiento personal del declarante. Contendrán los hechos que serían admisibles en evidencia y demostrarán afirmativamente que el declarante está cualificado para testificar en cuanto a su contenido. Podrán incluirse, además, copias juradas o certificadas de todos los documentos que se acompañen con la solicitud de sentencia sumaria. Regla 36.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.5.

Al dictar sentencia sumaria no se pueden poner en peligro o lesionar los intereses de las partes. La parte que solicita la sentencia sumaria en un pleito tiene la obligación de demostrar, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho pertinente que a la luz del derecho sustantivo determinaría una sentencia a su favor. *Hurtado Latre,* a la pág. 1065. Por eso, si existen dudas sobre la existencia de una controversia de hechos, éstas deben resolverse en contra de la parte que solicita la sentencia sumaria presentada. *Id., Caquías Mendoza,* a la pág. 11079; *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 D.P.R. 714, 720 (1986). El procedimiento de sentencia sumaria no permite que el tribunal dirima cuestiones de credibilidad. *PFZ Properties, Inc.,* a la pág. 125; *Col. de Ingenieros y Agrimensores de P.R. v. A.A.A.,* \_\_\_ D.P.R.\_\_\_ (1992), **92 J.T.S. 137**, a las págs. 10010, 10025. Ante una moción de sentencia sumaria, el tribunal no puede juzgar cuestiones de hechos, sino que su autoridad se circunscribe a determinar si hay cuestiones que deben dilucidarse en juicio. *Sucn. Meléndez v. DACO,* 112 D.P.R. 86, 89 (1982).

### III

Hemos examinado con cuidado la totalidad de la deposición y no sólo los segmentos de las páginas 32 y 37 que cita el patrono querellado en su moción de sentencia sumaria. A continuación citamos la totalidad de las partes de la deposición que entendemos son pertinentes y que incluyen a su vez los pequeños trozos citados por la querellada. Ello dará una visión más amplia y clara de la controversia sobre los hechos.

*"LCDO. NUÑEZ:*

*P. En el párrafo cinco de su querella usted alega que su despido de empleo en Ponderosa fue sin justificación o causa alguna el pasado tres de febrero del '94. ¿Por qué entiende que fue injustificado su despido?*

*R. Porque yo en ningún momento quería abandonar mi trabajo. Yo considero que en mis horas libres yo podía hacer lo que yo quisiera siempre y cuando yo no estuviera perjudicando a Ponderosa. Y yo entiendo que en ningún momento yo perjudiqué mi trabajo en Ponderosa.*

*P. ¿Y quién le dijo que usted perjudicó el trabajo en Ponderosa?*

*R. Bueno, cuando me reclaman a mí--el señor Edwin Cruz, pues él me dice que yo no podía hacer eso.*

*P. Perdóneme.*

*¿Que no podía hacer qué?*

*R. Trabajar en--*

*P. ¿Trabajar dónde?*

*R. - -Bonanza.*

*P. Umhum.*

*Explíqueme qué pasó con el señor Edwin Cruz. Hábleme de qué ocurrió y cuándo ocurrió.*

*R. Okay.*

*El día que me llama el señor Edwin Cruz, que yo voy a mi trabajo, él me dice a mi después de media hora que yo estoy en la tienda, me llama y e [sic] dice, "entra a mi oficina". Y yo entro a la oficina y dice, "Giselle, este, tienes que renunciar."*

*P. Umhum.*

*R. Y yo le digo, "¿por qué; qué yo hice?" Y me dice, "bueno, nos han llegado --este-- nos han*

avisado que tú estás trabajando en Bonanza." Y yo le dije, "pero es que yo no trabajo en Bonanza.

**P.** *Umhum.*

**R.** *Entonces, pues, los nervios, el desespero, el qué voy a hacer, le explicó a él, "te puedes comunicar con otra persona, que hablen, que yo no quiero dejar mi trabajo.*

**P.** *Umhum.*

**R.** *El me dice, "lo mejor que puedes hacer es que renuncies.*

**P.** *Umhum.*

**R.** *--porque se te va a dañr tsic] tu récord, no vas a poder conseguir más ningún trabajo." Y yo le dije, "pero es que no quiero renunciar." Me dice, "es lo mejor que te--que puedes hacer."*

**P.** *¿Y qué más pasó?*

**R.** *Y entonces--y él me hizo la carta de renuncia y yo la pasé.*

**P.** *¿Y usted?*

**R.** *Y yo la pasé a mi letra.*

**P.** *¿Usted la pasó a su letra?*

**R.** *Sí.*

**P.** *¿Y entregó la carta?*

**R.** *Y se la di.*

**P.** *¿Previo a esa conversación con el señor Cruz, alguien le había dicho que usted se tenía que ir, alguien le había dicho que la iban a despedir?*

**R.** *La señora Margarita Rosa.*

**P.** *¿Qué le dijo Margarita?*

**R.** *Margarita Rosa llamó a la oficina durante mis horas de trabajo y me dice, "vente a la oficina". Me llama y me dice, "Giselle, me han notificado que estás trabajando en Bonanza., y yo le dije, "yo no trabajo en Bonanza ya. Yo trabajé en Bonanza.*

**P.** *Umhum.*

**R.** *Y me dice, "¿sabes que te pueden botar por eso?" Y yo le dije, "si me botan, pues yo voy al Departamento de Trabajo y me quejo."*

**P.** *Umhum.*

**R.** *Y ella me dijo, "pues lo veremos."*

**P.** *Umhum. ¿Algo más?*

**R.** *No. Yo cerré la puerta y seguí mi trabajo.*

**P.** *Okay.*

*¿Cuándo fue esa conversación?*

**R.** *Cuatro días antes de que el señor Edwin Cruz me despidiera.*

**P.** *Cuatro días antes de que el señor Edwin Cruz la despidiera. Okay.*

*Mire a ver sí está es la carta que usted ha hecho referencia.*

**LCDO. NUÑEZ:**

*Estamos hablando del tres de marzo,-*

**LCDO. MARRERO:**

*Umhum.*

**LCDO. NUÑEZ:**

*--que le dieron la carta de renuncia.*

**LA DEPONENTE:**

*Es mi firma.*

**LCDO. NUÑEZ:**

**P.** *Es su firma.*

*¿Y esta fue la carta que usted hizo referencia que Edwin Cruz la escribió originalmente?*

**R.** *Es correcto.*

**P.** *¿Y usted la pasó a manuscrito?*

**R.** *Es correcto.*

**P.** *¿Y copió exactamente lo que le puso el señor Edwin Cruz en su carta?*

**R.** *Es correcto.*

**P.** *¿Y por qué firmó esta carta?*

...........

**LA DEPONENTE:**

*¿Cómo que por qué?--*

**LCDO. NUÑEZ:**

**P.** *¿Por qué la firmó? ¿Por qué lo hizo?*

**R.** *Bueno, porque está pasada a mi letra.*

**P.** *Sí, sí. Pero quiero decir, ¿por qué la pasó, si usted no se quería ir de Ponderosa?*

**R.** *Pero él me obligó como uno dice, porque--*

**P.** ¿Cómo la obligó?

**R.** Porque me amenazó con que yo no podía volver a trabajar en más ningún sitio. Se me iba a dañar mi récord,

**P.** Umhum.

**R.** --los mismos nervios. Yo estaba nerviosa, estaba llorando, no sabía qué hacer, la primera vez que me pasa esto. ¿Qué yo sé? Yo no sabía nada. Pues yo pensaba que él me estaba haciendo un bien.

**P.** Umhum.

**R.** Y así fue.

**P.** ¿Hubo alguna otra conversación, dijeron algo más en esa conversación Edwin Cruz o nos ha relatado todo?

**R.** Yo he relatado-

**P.** Piénselo bien a ver si se le ha quedado algo. Con calma, piénselo. Si quiere un receso porque la veo que está un poquito nerviosa, si quiere un receso, con mucho gusto, si quiere un poquito de agua.

**R.** Okay.

**P.** ¿Está bien, puede continuar?

**R.** Sí (con la cabeza).

**P.** Bien.

Piense bien. ¿Me ha relatado todo, no se le ha quedado nada? ¿Había alguien más presente en esa conversación con Edwin?

**R.** Pues mire- - ¿Cuando él me despidió?

**P.** Si, cuando ustedes dos estaban, cuando la carta. ¿No había más nadie presente?

**R.** No.

**P.** ¿Con su conversación con Margarita fue--

**R.** Umhum.

**P.** --había alguien más presente?

**R.** No.

**P.** ¿Dónde se llevó a cabo la conversación con-

**R.** En la oficina.

**P.** ¿En la misma oficina de Cruz?

**R.** Sí.

**P.** ¿Las dos conversaciones se llevan a cabo en la misma oficina; esa es la oficina de la tienda, del supervisor en la tienda?

**R.** Es correcto, sí.

**P.** ¿Y debo entender entonces que la conversación con Cruz fue el mismo día tres de febrero?

**R.** Sí.

**P.** Y ahí aparece firmado tres de marzo.

**R.** Umhum.

**P.** Y usted, me imagino fue, porque la copió idéntica a lo que puso Cruz.

**R.** Sí.

**P.** ¿Eso es correcto?

**R.** Sí.

**P.** ¿Una vez usted concluyó de hablar con Margarita-

**R.** Umhum.

**P.** Habló con alguna compañera suya sobre el asunto?

**R.** No.

**P.** No.

**P.** ¿Una vez concluida la conversación con Cruz, habló con algún compañero suyo sobre el asunto?

**R.** No.

**P.** ¿Una vez concluida su conversación con Margarita fue usted al Departamento del Trabajo?

**R.** No.

**P.** ¿Alguna vez había ido al Departamento del Trabajo previo a ese momento?

**R.** No.

**P.** ¿Una vez concluida con la conversación con Margarita fue usted al Departamento del Trabajo?

**R.** No.

**P.** ¿Nunca fue al Departamento del Trabajo con relación a lo que usted reclama aquí?

**R.** No.

**P.** En el párrafo seis usted alega que su despido se debió o se discriminó con relación a sus términos y condiciones de empleo, cuando usted ofreció o intentó ofrecer testimonio ante un foro administrativo.

¿A qué foro administrativo nos referimos ahí?

**R.** Departamento del Trabajo.

**P.** ¿Cuándo usted ofreció o intentó ofrecer testimonio ante ese foro?

*R. Bueno, cuando le dije a Margarita Rosa que si me botaba yo iba a hacerle una querella en el Departamento del Trabajo.*

*P. ¿Pero nunca fue al Departamento?*

*R. No.*

*P. ¿Así que nunca intentó ofrecer el testimonio en el Departamento?*

*R. Intenté hacerlo-*

*LCDO. MARRERO:*

*Sí.*

*LCDO. NUÑEZ:*

*P. Sí.*

*R. Sí, yo--*

*P. Y quién se lo impidió?*

*R. Pues, yo seguí mi trabajo. Yo esperaba- cuando ella me dijo a mí este, "te podemos botar,"--*

*P. Umhum.*

*R. --que yo le dije a ella, "pues, yo voy a hacer una declaración en el Departamento del Trabajo, una querella," pues yo esperaba que ella me iba a botar.*

*P. Umhum.*

*R. Si ella me botaba, pues yo me iba a quejar-*

*P. Umhum.*

*R. Porque yo consideraba que ella no me podía hacer eso porque en mis horas libres yo quería hacer lo que yo quisiera y yo no estaba perjudicando a Ponderosa."*

Véase Deposición de Giselle Marrero Díaz, a las págs. 30-39, Exhibit 3, Réplica a Moción Mostrando Causa.

## IV

A tenor con las anteriores contestaciones de la querellante el patrono alegó en su solicitud de sentencia sumaria que ésta aceptó y admitió que a ella no se le despidió debido a que ofreció o intento ofrecer testimonio ante el Departamento del Trabajo y que, por lo tanto, procedía desestimar la querella. El tribunal *a quo* declaró con lugar dicha moción y dictó sentencia parcial *"desestimando la causa de acción en cuanto al alegado discrimen por la querellante haber ofrecido o intentar ofrecer testimonio ante un foro administrativo."* Cometió error el tribunal al así resolver. Además, el tribunal determinó como hecho probado en su sentencia que *"[l]a señorita Marrero cesó en su trabajo con Ponderosa".* (Énfasis suplido.) Desconocemos de dónde surge este hecho probado tan pertinente al caso, ya que en la solicitud de sentencia sumaria de la querellada no se indica la fuente admisible en evidencia de donde surge el mismo.

El argumento del patrono de que la querellante aceptó en la deposición que nunca ofreció o intentó ofrecer testimonio ante el Departamento del Trabajo y que no fue despedida porque prestó testimonio en un foro administrativo no derrota la causa de acción de la querellante. De la propia deposición surge que al momento del despido de la querellante no había querella o testimonio alguno en el

Departamento del Trabajo relacionado con el despido, pero sí surge de la moción de sentencia sumaria, la deposición y la oposición a la moción el hecho en controversia de si la querellante intentó querellarse al Departamento del Trabajo y por qué razón fue despedida. Además, bajo la Ley de Represalias se prohibe que los patronos despidan a sus empleados por el mero hecho de **intentar ofrecer verbalmente o por escrito cualquier testimonio.** ■

Este hecho sería suficiente para derrotar la solicitud de sentencia sumaria de la querellada. No obstante, surgen de los anteriores documentos y de la moción de sentencia sumaria presentada por la querellante y la oposición a ésta las siguientes controversias de hechos importantes y pertinentes para la reclamación que nos ocupa: si la querellante fue despedida por su patrono o si por el contrario renunció a su empleo; de haber sido despedida, si fue por razón de intentar querellarse al Departamento del Trabajo o si fue porque violentó la norma Núm. 42 del Reglamento de Disciplina de los Empleados el cual prohibe trabajar para la competencia; si dicha norma, a tenor con la Ley Núm. 80, *supra*, es razonable o no, atendidos los criterios de razonabilidad para despido inmediato a la primera falta según expuestos en *Rivera Aguila v. Kmart de P.R.,* 123 D.P.R. 599 (1989) y *Secretario del Trabajo v. I.T.T.,* 108 D.P.R. 536, 542. Estos resuelven que como excepción la Ley Núm. 80 considera una sola ofensa o primera falta como justa causa para el despido de un empleado, si ésta, por su gravedad y su potencial de daños pone en riesgo el orden, la seguridad o la eficiencia que constituyen la normalidad operacional de una empresa. Es decir, la falta que de lugar al despido en primera ofensa ha de ser de tal seriedad que revele un indicador de su carácter tan lesivo al buen funcionamiento de la empresa, que constituiría imprudencia esperar su reiteración para separarlo del trabajo. Está en controversia además, si la querellante a la fecha del despido trabajaba o no en Bonanza. Finalmente habrá de adjudicarse si su despido fue justificado o no y el remedio a que tiene derecho, si alguno.

El mecanismo procesal de sentencia sumaria no es aconsejable en casos donde hay elementos subjetivos de intención, propósitos mentales o negligencia, ni cuando el factor credibilidad es esencial, como en los casos de despido discriminatorio. Así, en *García López v. Méndez García,* 88 D.P.R. 362, 380 (1963), el Tribunal Supremo expresó que:

*"Si bien la Regla 36 no queda excluida como cuestión de derecho de ningún procedimiento en particular... hay litigios y controversias que por la naturaleza de los mismos no hacen deseable o aconsejable el resolverlos mediante una sentencia sumariamente dictada, porque difícilmente en tales casos el Tribunal puede reunir ante sí toda la verdad de los hechos a través de "affidavits" o deposiciones. Este caso [de discrimen] es típico de una de esas controversias, donde hay elementos subjetivos envueltos, y de intención y propósitos mentales, donde el factor de **credibilidad** juega un papel esencial, si no el decisivo, para llegar a la verdad, y donde un litigante depende en gran parte de lo que extraiga del contrario en el curso de un juicio vivo."* (Enfasis en original.)

Recientemente en *Soto v. Hotel Caribe Hilton,* ___ D.P.R. ___ (1994), **94 J.T.S. 128,** se reiteró la doctrina de que los casos en que se alega discrimen en el empleo deben ser rigurosamente examinados por los tribunales con un análisis detenido y juicioso de los hechos, ya que de ordinario esos casos contienen elementos subjetivos o de intención y hay que hacer unas determinaciones de credibilidad y, por lo tanto, no se favorece la adjudicación sumaria de ellos sino la celebración de un juicio en su fondo.

Nos dice *Soto, supra,* a la pág. 313, *"ello cobra una mayor importancia cuando se trata de una reclamación de tan alto interés público como lo es el discrimen en el empleo".*

En el presente caso existen controversias de hechos que deben ser adjudicadas por el Tribunal de Primera Instancia en un juicio en los méritos donde se escudriñe el motivo o la intención de las partes, donde el juzgador pueda reunir ante sí toda la verdad de los hechos y donde se hagan las determinaciones de credibilidad que correspondan.

En el caso específico de la Ley Núm. 115, Ley de Represalias, el querellante tiene el derecho a probar el discrimen del patrono mediante evidencia directa o circunstancial, Art. 2(c) de la Ley Núm. 115, *supra,* 29 L.P.R.A. sec. 194b(c).

Por ello resolvemos que no es posible requerirle a la querellante que establezca su caso de discrimen patronal en una deposición durante la fase de descubrimiento de prueba previo al juicio. Véase *Champlin v. Oklahoma Furniture Manufacturing Co.,* 269 F.2d. 918 (1959), donde se implica que ello sería casi aceptar un juicio por *afidávit*.

## V

Por las razones antes expuestas se expide el auto de *certiorari*, se revoca la sentencia sumaria parcial dictada por el tribunal de instancia, así como las resoluciones emitidas el 10 de octubre y 27 de noviembre de 1996 y se devuelve el caso para la continuación de los procedimientos.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Sonia Pacheco Román
Secretaria General

### ESCOLIOS 96 DTA 49

**1.** La primera aceptación de despido por parte de la querellada surge de la Oposición a la Moción de Reconsideración presentada por la querellada el 20 de octubre de 1996 a la pág. 2 y posteriormente en el párrafo 16 de la Moción de Reconsideración la Resolución Interlocutoria a las págs. 3 y 4 de fecha 27 de octubre de 1996. Estas admisiones son posteriores a las mociones de sentencia sumaria y oposiciones a las mismas.

**2.** La norma núm. 42 del Reglamento de Disciplina del patrono dispone que es violación a éste: *"Dedicarse en horas libres a actividades que están en competencia o conflicto con las operaciones de la Empresa."*

**3.** Es posible que el Tribunal de Primera Instancia al emitir su Resolución el 27 de noviembre de 1996 no estuviera informado de la presentación del recurso ante nos.

**4.** 29 L.P.R.A. sec. 194a. Para una interpretación sobre estas disposiciones de ley, véase la Opinión Núm. 92-5 de 22 de octubre de 1992 del Secretario del Departamento del Trabajo y Recursos Humanos.

**5.** *Rosado Vázquez v. Insular Wire Products. Corp.*, Núm. KLCE-95-00343, 25 de agosto de 1996, Circuito Regional II, Hons. Fiol Matta, Rodríguez de Oronoz y Gierbolini; confirmada mediante Sentencia del Tribunal Supremo, Núm. AC-95-17, 6 de diciembre de 1996.